Filed 6/30/15  Nishida v. Dumas CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| GARY NISHIDA, | B250957 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC507805) |
| v. | |
| JOSE L. DUMAS et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Abraham Khan, Judge.  Reversed and remanded.

Nemecek & Cole, Jonathan B. Cole, and D. Wayne Jeffries for Defendant and Appellant Jose L. Dumas.

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup, and Bartley L. Becker for Defendant and Appellant John Clark Brown, Jr.

Henry M. Lee and Michelle P. Tran for Plaintiff and Respondent Gary Nishida.

_____

This appeal arises from a malicious prosecution action brought by respondent Gary Nishida against appellants Jose L. Dumas and John Clark Brown, Jr. Dumas previously filed a lawsuit against Nishida for breach of contract and fraud based on a failed real estate transaction between the parties. The trial court in the underlying lawsuit granted Nishida's motion for judgment on the pleadings as to the breach of contract claim, and Dumas later voluntarily dismissed with prejudice the fraud claim. Nishida then filed this malicious prosecution action against both Dumas and Dumas's attorney, Brown, alleging that they had pursued the underlying lawsuit with malice and without probable cause until the action was terminated in Nishida's favor. The trial court in the malicious prosecution action denied the special motions to strike filed by Dumas and Brown pursuant to Code of Civil Procedure[1] section 425.16, and they both now appeal that ruling. For the reasons set forth below, we reverse.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. Dumas and Nishida Enter into a Complex Real Estate Transaction

Dumas owned a 10-acre ranch in Temecula, California. In 2007, he listed the property for sale for $1.495 million. An acquaintance named Anthony Wells offered to purchase the ranch for $1.4 million. However, Wells advised Dumas that, because he could not obtain financing for the purchase, his business partner, Nishida, would be the buyer of record. Dumas accepted Wells's offer.

Following several discussions, Dumas and Wells orally agreed that the Temecula ranch would be sold to Nishida under the following terms: (1) The total purchase price would be $1.4 million; (2) The purchase price "on paper" would be $1.1 million, which Wells and/or Nishida would deposit into an escrow account; (3) Wells and/or Nishida would pay Dumas an additional $300,000 for the purchase of the ranch within one year after the close of escrow ("$300,000 deferred consideration"); (4) Dumas would loan Wells and Nishida an additional $300,000 as an unrelated business loan ("$300,000

---

[1] Unless otherwise stated, all further statutory references are to the Code of Civil Procedure.

2

business loan"); and (5) The obligations on the $300,000 deferred consideration and the $300,000 business loan would be memorialized in a $600,000 promissory note from Nishida to Dumas, secured by both a second deed of trust on the ranch and a second deed of trust on Nishida's personal residence.

On August 29, 2007, Nishida and Dumas entered into a written purchase agreement for the Temecula ranch at the stated price of $1.1 million.[2]  On November 20, 2007, Nishida executed a secured promissory note in favor of Dumas in the amount of $600,000, which provided that repayment of the note, plus interest, would be made on or before December 10, 2008.  In connection with the $600,000 note, Nishida also executed a second deed of trust on the Temecula ranch and a second deed of trust on his personal residence in Huntington Beach, California.  Each deed of trust expressly provided that it was security for the $600,000 note.

The escrow was handled by Premiere Capital Escrow, Inc. ("Premiere").  The record on appeal includes unsigned escrow instructions dated August 29, 2007, which provided for a total consideration of $1.1 million, consisting of $275,000 in cash deposits by Nishida and a $825,000 loan secured by a new first deed of trust on the Temecula ranch.  The record also includes two amended escrow instructions executed by Dumas and Nishida relating to the $600,000 promissory note.  A signed amendment dated December 3, 2007 provided that the second deed of trust on Nishida's personal residence was collateral security for the $600,000 note and would be recorded by the escrow holder immediately following the close of escrow.  A signed amendment dated December 5, 2007 directed the escrow holder to obtain title insurance on the Temecula ranch and Nishida's residence in connection with the note.

---

[2]     The record on appeal includes only an unsigned copy of the August 29, 2007 residential purchase agreement.  However, the parties do not dispute that they signed a written agreement for the purchase of the Temecula ranch with an "on paper" purchase price of $1.1 million.

3

An additional amendment to the escrow instructions dated December 7, 2007, and purportedly signed by Nishida, was submitted to Premiere.  It provided that any escrow funds due Nishida at the close of escrow were to be wired to an entity named World Enterprise Investments ("World Enterprise").  According to Dumas, the sole equity holder in World Enterprise is Wei Houng, who also was the loan officer at Countrywide Bank responsible for arranging the loan for Nishida to purchase the Temecula ranch.  Nishida has denied, however, signing this amended instruction.

Escrow closed on December 10, 2007.  According to the final settlement statement issued by Premiere, Nishida made cash deposits totaling $270,000 into the escrow account.[3]  Nishida also obtained a loan from Countrywide Bank in the amount of $825,000, secured by a first deed of trust on the Temecula ranch.  Of the approximately $1.1 million deposited into the escrow, $300,000 was used to pay off existing obligations on the ranch and each party's closing costs.  Following such payments, the escrow account thus held a balance of approximately $800,000.

A central disputed issue in the ensuing litigation was how the balance of $800,000 in escrow funds was supposed to be disbursed by the escrow holder in light of the $300,000 business loan to be made to Nishida and Wells.  Neither the escrow instructions nor any of the other documents signed by the parties expressly provided how or when the business loan would be made.  At different times during the underlying lawsuit and the malicious prosecution action, Dumas and Brown have adopted inconsistent positions with respect to this issue.  One assertion was that the loan would be made through escrow, with the escrow holder disbursing $300,000 to Nishida and $500,000 to Dumas at closing.  The other was that the loan would be made outside of escrow, with the escrow holder disbursing $800,000 to Dumas at closing, and Dumas then loaning $300,000 to Nishida and retaining $500,000.  The escrow funds were not disbursed in either manner.

---

[3]    Although the escrow instructions provided for a total cash deposit of $275,000, it appears that Nishida received a $5,000 credit on the agreed upon deposit.  That credit is not at issue on appeal.

For reasons that remain unclear, it appears that the escrow officer at Premiere believed that Nishida was to be credited $500,000 and that Dumas was to receive the remaining balance of escrow funds. While Premiere's final settlement statements reflected a $500,000 credit to the buyer with the note "PER INSTRUCTIONS, $600,000 TO SELLER," neither the original escrow instructions nor the amended instructions signed by the parties provided for any such credit.[4] On December 11, 2007, after applying a $500,000 credit to Nishida, Premiere disbursed approximately $330,000 in escrow proceeds to Dumas. That same day, Premiere disbursed approximately $474,000 in escrow proceeds to World Enterprise pursuant to the December 7, 2007 amended instruction directing that any escrow funds due Nishida be wired to that entity.

The record does not affirmatively establish whether Houng transferred any of the $474,000 in escrow funds that World Enterprise received to either Nishida or Wells. However, in a signed declaration filed in the underlying lawsuit, Nishida stated that "the only money that I ever received from Mr. Dumas was $160,000 which was part of the $300,000 business loan that was supposed to be given to me and . . . Wells." Given that Dumas did not directly fund any portion of the business loan, it appears that the $160,000 received by Nishida may have been provided to him by Houng.

---

**4** The record on appeal does include one additional unsigned amendment to the escrow instructions dated November 20, 2007. This amendment provided that the parties had agreed the Seller would accept "total proceeds in the amount of $600,000.00, plus all Seller[']s and Buyer[']s costs and expenses, . . . less any and all payoffs of the existing encumbrances," and that "in consideration of the reduction of Seller[']s proceeds," the escrow holder would prepare a promissory note secured by a deed of trust in favor of the Seller in the amount of $600,000. It further provided that "any and all net proceeds over and above the $600,000 . . . shall be credited to Buyers at the close of this escrow transaction without further written approval required." This unsigned amendment was attached as an exhibit to an opposition brief that Brown filed on Dumas's behalf in the underlying lawsuit. The parties do not discuss this amendment in their briefs on appeal, nor indicate whether it was ever signed by the parties or provided to the escrow holder. We note, however, that the December 5, 2007 amendment to the escrow instructions, which was signed by both Dumas and Nishida, expressly referenced a prior amendment to the instructions dated November 20, 2007.

Nishida and Wells did not make any payments on the $600,000 promissory note to Dumas. Nishida also defaulted on the $825,000 loan from Countrywide, which later foreclosed on the first deed of trust for the Temecula ranch. Consequently, the only money that Dumas received from either Nishida or Wells was the approximately $330,000 in escrow funds disbursed by Premiere.

## II.     The Underlying Lawsuit

### A.     Dumas Sues Nishida for Breach of Contract and Fraud

On August 4, 2009, Dumas filed a civil action against Nishida, Wells, Huong, Premiere, and Countrywide in Los Angeles County Superior Court (Case No. BC419171; the "underlying lawsuit"). The complaint asserted two causes of action against Nishida for breach of contract and fraud arising out of the parties' transaction. It specifically alleged that Huong had ongoing dealings with Nishida and Wells, and had arranged for Nishida to receive a $500,000 credit in the sale of the Temecula ranch without Dumas's knowledge or consent. The complaint further alleged that Nishida and Wells actively lied to Dumas to induce him to enter into certain "side deals" which they never intended to perform, and that Premiere, Countrywide, and Houng knowingly assisted in such fraud. It also alleged that Nishida and Wells breached their agreement with Dumas, and had subsequently acknowledged their debts to him. The complaint sought damages in excess of $1 million, including the $300,000 deferred consideration and the $500,000 escrow payment allegedly made to Nishida and/or Houng.

Dumas originally was represented in the underlying lawsuit by Andrew Rosenfeld. On October 28, 2009, Brown, who had been referred to Dumas as a specialist in real estate litigation, began representing Dumas on a cross-complaint filed by Nishida, while Rosenfeld continued to represent Dumas on the original complaint. On August 24, 2010, Brown substituted for Rosenfeld as Dumas's attorney of record in the underlying lawsuit.

During the course of the underlying lawsuit, Dumas authorized Brown to dismiss Countrywide as a defendant based on Brown's advice that the evidence did not support liability on the part of Countrywide. Dumas also authorized the dismissal of both Wells and Houng without prejudice after these two defendants could not be located for purpose

6

of service of process.[5] On behalf of Dumas, Brown continued to pursue the underlying lawsuit against Nishida and Premiere, and ultimately obtained a default judgment against Premiere in Dumas's favor.

**B.      Dumas Forecloses on the Deed of Trust for Nishida's Residence**

On June 3, 2009, prior to filing the underlying lawsuit, Dumas recorded and served a notice of default on the $600,000 promissory note and election to foreclose on the deed of trust for Nishida's Huntington Beach residence.  On September 8, 2009, Dumas recorded and served a notice of trustee's sale of the residence scheduled for March 2, 2010.  Nishida thereafter sought a preliminary injunction to stay the foreclosure proceeding, arguing that neither he nor Wells received the $300,000 business loan from Dumas.

In an opposition filed on behalf of Dumas, Brown asserted that the $300,000 loan was funded from the $500,000 in escrow funds credited to Nishida by the escrow holder.  The opposition was supported by a declaration from Dumas, who stated the parties had agreed the escrow holder would disburse $300,000 to Nishida as the business loan and $530,000 to Dumas as the balance of escrow proceeds after existing debts on the ranch were paid off.  Dumas further stated that, without his consent, the escrow holder instead disbursed $500,000 to Nishida and only $330,000 to Dumas, causing Dumas a loss of $200,000 from the proceeds of the escrow.

On December 3, 2009, the trial court in the underlying lawsuit granted a preliminary injunction to stay the foreclosure proceeding.  The court found that Dumas had failed to submit admissible evidence showing that Nishida actually received the $500,000 in escrow funds improperly disbursed by the escrow holder, and without such evidence, Dumas could not demonstrate that Nishida received the benefit of his bargain. In granting injunctive relief, the court ordered Nishida to post a $45,000 bond.  It appears, however, that Nishida was unable to do so, and as a result, the foreclosure went

---

[5]      Brown later filed a separate civil action on behalf of Dumas against Wells and Houng for fraud and constructive trust.

forward. On March 4, 2010, Dumas purchased Nishida's residence at a non-judicial foreclosure sale with a successful credit bid of $495,000.[6]

### C. Nishida and Dumas Are Deposed in the Underlying Lawsuit

Brown took Nishida's deposition in the underlying lawsuit on November 22, 2010. Nishida denied signing the amended escrow instruction directing Premiere to wire any escrow funds due Nishida to World Enterprise. Nishida also denied any knowledge of the $500,000 credit referenced in Premiere's settlement statement and testified that he did not know why Premiere had provided him with such credit.

Dumas's deposition was taken on December 16, 2010. Dumas testified that the $600,000 promissory note was secured by two deeds of trust on the Temecula ranch and Nishida's personal residence, and that each deed of trust was collateral for the full $600,000 note. Dumas further testified that the $300,000 business loan to Wells and Nishida "was going to come from the funds that were in the escrow," and that Dumas expected to receive the balance of approximately $530,000 in escrow funds. Instead, Dumas received only $330,000, and thus, "was short [$]200,000." In addition, Dumas testified that, after $500,000 in escrow funds went "missing," Wells told Dumas that it was a mistake and he would take care of it, but he never did. Dumas did not know if Wells or Nishida were involved in the disbursement of the $500,000 from the escrow or received any portion of those funds.[7]

In a June 4, 2010 letter to Brown, Nishida's attorney stated that, under the "one action rule," Dumas was barred from recovering any damages from Nishida because he had foreclosed on Nishida's residence. Nishida's attorney demanded that Dumas dismiss

---

[6] The following year, on March 10, 2011, Nishida's residence was sold to a third party and Dumas received approximately $295,000 from the sale.

[7] On June 6, 2013, Dumas was deposed in connection with his separate civil lawsuit against Wells and Houng. At that time, he similarly testified that he believed $300,000 of the misdirected escrow funds constituted the business loan to Nishida and Wells. Dumas also testified that he never denied that he had loaned $300,000 to Nishida or that the loan had been funded from the proceeds of the escrow.

the underlying lawsuit and threatened to bring a motion for sanctions if a dismissal was not filed by June 7, 2010. Dumas did not take any action to dismiss his lawsuit, however, and Nishida did not file a motion for sanctions at that time.

### D. Trial Court Grants Judgment on the Pleadings on the Contract Claim

Trial in the underlying lawsuit was set for January 2011. On January 6, 2011, Nishida filed a trial brief in which he raised section 726's "one action rule" as a complete defense to the breach of contract claim, reasoning that Dumas was precluded from any recovery on the contract once he elected to non-judicially foreclose on the deed of trust for Nishida's residence. Shortly thereafter, on January 18, 2011, Nishida filed a motion for judgment on the pleadings in which he similarly argued that the breach of contract claim was barred by section 726's "one action rule" and section 580's anti-deficiency statute. Nishida also asserted that the entire complaint was barred by the doctrine of unclean hands because Dumas had engaged in fraud by concealing the full terms of the purchase agreement from Nishida's lender.

On January 24, 2011, Brown filed an opposition to the motion for judgment on the pleadings on behalf of Dumas. In his original complaint, Dumas had sought to recover the $500,000 in escrow funds paid to World Enterprise and the $300,000 in deferred consideration owed for the purchase of the Temecula ranch. Once Nishida raised the anti-deficiency statute as a defense, Brown conceded that Dumas was not entitled to recover the $300,000 deferred consideration under section 580, subdivision (b) because it was part of the purchase price for the ranch. However, Brown continued to seek recovery of the $500,000 in escrow funds credited to Nishida on the ground that such funds represented an unsecured obligation separate from the $600,000 promissory note. In addition to the $500,000 escrow credit, Brown contended that Dumas was entitled to recover the $300,000 business loan to Nishida and Wells. Brown reasoned that Dumas was not barred from obtaining a deficiency judgment on the loan even though he had foreclosed on the deed of trust for Nishida's residence because the loan also was secured by a separate deed of trust on the Temecula ranch and Dumas was a sold-out junior lienholder with respect to that security.

9

On February 14, 2011, the trial court granted Nishida's motion for judgment on the pleadings on the breach of contract claim. The court concluded that Dumas was barred by the anti-deficiency statute and the "one action rule" from seeking a deficiency judgment against Nishida for any portion of the $600,000 promissory note because Dumas had non-judicially foreclosed on the deed of trust for Nishida's residence, which by its terms, secured the full $600,000 note. The court did not, however, grant judgment on the pleadings on the fraud claim. At the request of Nishida's counsel, the trial date on that remaining claim was continued to April 25, 2011.[8]

On February 28, 2011, Brown filed a written motion for leave to amend the complaint on behalf of Dumas. He sought to add a cause of action for restitution/unjust enrichment against Nishida to recover the $160,000 which Nishida admitted he had received. The proposed amended complaint alleged that, at the time Nishida executed the $600,000 promissory note and related deeds of trust, he did so as a personal favor to Wells and did not expect to receive any proceeds from the note. It also alleged that Wells had acknowledged that the $300,000 loan was fully funded. On that basis, the proposed amended complaint alleged that, of the $474,000 which Premiere disbursed to World Enterprise, $300,000 constituted a business loan to Wells and $160,000 constituted an unjust enrichment to Nishida, as Nishida had not expected to receive any funds at all.

In support of the motion for leave to amend the complaint, Brown submitted a declaration in which he stated that the unjust enrichment allegations were based on his November 22, 2010 deposition of Nishida and his February 21, 2011 interview of the escrow officer. Brown did not support the motion with any excerpts from Nishida's deposition or a declaration from the escrow officer, but rather summarized their statements to him. According to Brown's declaration, Nishida testified that he signed the

---

[8]     At the original hearing on the motion for judgment on the pleadings, Nishida's counsel informed the trial court that Nishida recently had suffered a serious work-related injury and would remain hospitalized for several weeks. The court accordingly granted counsel's request to continue the trial date.

promissory note and deeds of trust as a personal favor to Wells based on their 28-year friendship and that Nishida did not know the purpose of the documents when he signed them except that they would enable Wells to purchase the Temecula ranch.  The escrow officer told Brown that she had disbursed $474,000 in escrow funds to World Enterprise because she had assumed that Nishida was entitled to receive all the proceeds from the $600,000 note and she had received a signed amended instruction directing that any funds due Nishida be wired to World Enterprise.[9]

Based on these alleged facts, Brown argued that it was "unjust for Nishida to keep the $160,000 because: (1) it belongs to Dumas as part of the sale proceeds from the Temecula property; (2) Nishida was not supposed to receive any proceeds from the sale of the Temecula property; and (3) Nishida received the $160,000[] due to the mistake of Premiere . . . and Premiere's breach of obligation to Dumas by disbursing funds to World [Enterprise] without an instruction from Dumas."  The trial court, however, rejected this theory and denied the motion for leave to amend.

E.     **Trial Court Enters Judgment for Nishida and Sanctions Against Brown**

Following the trial court's ruling on the motion for leave to amend the complaint, Nishida filed a motion for sanctions under section 128.7 on the ground that Brown had acted in bad faith in seeking to file an amended pleading without probable cause.  On April 12, 2011, while the sanctions motion was pending, Nishida's attorney sent a letter to Brown demanding that Dumas dismiss the cause of action for fraud.  Nishida's attorney argued that the claim lacked merit because Dumas had admitted at his deposition that Nishida did not make any false representations to him, and Nishida had provided

---

[9]     The escrow officer subsequently was deposed in connection with the separate civil lawsuit that Dumas filed against Wells and Houng.  At the deposition, the escrow officer confirmed that she met with Brown in February 2011 and told him at the time that she had assumed Nishida was entitled to receive $600,000 from the escrow based on the promissory note and deeds of trust.  She did not recall telling Brown that she had made a mistake in how she disbursed the escrow funds.  She further testified that she believed she fulfilled all of her obligations as an escrow officer by acting in accordance with the signed written instructions provided by Dumas and/or Nishida.

11

undisputed testimony that he had no knowledge of the terms of the parties' transaction. Nishida's attorney also asserted that Dumas's continued prosecution of the action after foreclosing on Nishida's residence was a clear violation of the "one action rule" and anti-deficiency statute, and constituted malicious prosecution by both Dumas and Brown. On April 15, 2011, after obtaining Dumas's authorization, Brown filed a request to dismiss with prejudice the remaining fraud claim against Nishida.

On April 25, 2011, the trial court held a default prove-up hearing on the default previously entered against Premiere. At the hearing, Dumas testified that Wells was the only person with whom he had any dealings in the sale of the Temecula ranch. In his closing argument, Brown took the position that the business loan to Nishida and Wells had been funded from the escrow funds disbursed to World Enterprise. As Brown explained: "[T]he $300,000 business loan we know was funded and . . . instead of Dumas funding it from proceeds that he was to receive from close of escrow, it was funded by escrow when it wired $474,000 to World." At the conclusion of the hearing, the trial court granted a default judgment against Premiere.[10]

On June 8, 2011, the trial court entered judgment in favor of Nishida and against Dumas on the breach of contract and fraud causes of action. The court also granted the motion for sanctions filed by Nishida, and awarded monetary sanctions against Brown in the amount of $3,990.

### F.      Court of Appeal Affirms Judgment and Reverses Sanctions Order

On August 4, 2011, Dumas filed an appeal in the underlying lawsuit from the judgment entered in favor of Nishida. Brown also filed an appeal from the order granting Nishida's motion for sanctions. On February 4, 2013, Division Three of this court affirmed the judgment in favor of Nishida, but reversed the order of sanctions and

---

[10]      According to Brown, Dumas has been unable to collect on the default judgment against Premiere because the company is no longer in business and appears to be without any assets.

12

remanded the matter to the trial court for further proceedings on the sanctions motion. (*Dumas v. Nishida* (Feb. 4, 2013, B234970) [nonpub. opn.].)

The court of appeal first addressed whether Dumas could recover any deficiency judgment on the $600,000 promissory note. The court concluded that the anti-deficiency statute barred Dumas from any such recovery: "It is undisputed that the consideration for the note was comprised of $300,000 attributable to the increased purchase price for the Temecula property, and another $300,000 attributable to the business loan Dumas agreed to make to Nishida and Wells. This case turns on the latter $300,000, for the business loan, and is made somewhat more confusing by Dumas's occasional assertions that he never funded the business loan at all. Let us be clear: if the business loan was unfunded, Dumas wrongfully foreclosed on Nishida's house. In order for there to have been consideration for the business loan, the loan must have been funded, as . . . Brown expressly argued to the trial court, by part of the $474,000 which was paid to Houng out of escrow. As such, Dumas is barred from arguing that Nishida must repay him $300,000 of the $474,000. That $300,000 was the business loan to Nishida and Wells, which was secured by a deed of trust on Nishida's house. The anti-deficiency statute thus prevents Dumas from recovering *any* of that $300,000 from Nishida."[11]

The court next addressed whether Dumas could state a cause of action for breach of contract against Nishida for the additional $174,000 in escrow funds that were disbursed to Houng and did not constitute the $300,000 business loan. The court noted that "'[a]s a general rule, a loss resulting from the default, peculation, or similar wrong of an escrow holder, must, as between the parties to the escrow transaction, be borne by the one who, at the time of its occurrence, was lawfully entitled to the escrowed item irrespective of which party selected the escrow agent.'" The court concluded that "of the $474,000 which Premiere wired to Houng, Premiere should have disbursed $300,000 to

---

[11]    Dumas conceded the anti-deficiency statute precluded him from recovering the $300,000 deferred consideration which Nishida and Wells had failed to pay within one year after the close of escrow, "as this was purchase money" for the Temecula ranch.

13

Nishida or his assignee, and should have disbursed the remaining $174,000 to Dumas. As such, if the money did not reach its intended destination, each party would bear the burden of its portion of the loss. . . . [¶] [However], [i]f Dumas could and did allege that Nishida's negligence was, in fact, the cause of Premiere's misdirection of funds, Dumas could assert a claim for the $174,000 against Nishida." The court then concluded that Dumas could not state a breach of contract cause of action against Nishida for Premiere's misdirection of funds because "Nishida had no contractual duty to pay [Dumas] these additional funds. (Footnote omitted.) Nishida's obligation was to fund the escrow; this obligation was satisfied. (Footnote omitted.) It was Premiere which was contractually obligated to distribute the escrow proceeds to Dumas; it was Premiere which should be liable for breaching this contract."

The court also addressed whether Dumas should have been granted leave to amend his complaint to state a cause of action against Nishida for unjust enrichment. The court concluded that the trial court did not abuse its discretion in denying leave to amend because Dumas prejudicially delayed in seeking leave to add the proposed claim. The court further concluded that the proposed amendment failed to state a cause of action for unjust enrichment because Dumas could not show that the $160,000 which Nishida admitted receiving was in excess of the $300,000 business loan that Nishida was entitled to receive from the escrow. In addition, the court concluded that the allegations concerning Nishida's close relationship with Wells and his purported signature on the escrow instruction were insufficient to state an unjust enrichment claim against Nishida for the escrow holder's mistake. The court explained that its "review of the proposed amended complaint points to one inevitable conclusion: the $500,000 was credited to Nishida's account because the escrow officer, being unaware that the note evidenced a $300,000 increase in consideration and an additional $300,000 business loan, mistakenly assumed that Nishida was entitled to the entire $600,000 proceeds of the loan. If anyone's negligence allowed this mistake to happen, it was the joint negligence of the parties, who instructed the escrow officer to record the deeds of trust securing the loan, but did not properly instruct the escrow officer as to the full terms of their transaction.

14

Thus, neither party is more responsible for the escrow officer's negligence in this regard, and the cause of action for unjust enrichment fails."

Although the court affirmed the judgment in favor of Nishida, it reversed the order of sanctions against Brown. The court noted that the trial court had imposed sanctions against Brown on the basis that the written motion for leave to amend the complaint was an improper attempt to seek reconsideration of the denial of a prior oral motion for leave to amend. The court concluded that the trial court should not have awarded sanctions on that ground because Brown had pursued a new and different theory in his written motion for leave to amend. However, it also concluded that sanctions could be ordered under section 128.7 if the proposed amended complaint pleaded claims that were not warranted by existing law or allegations that lacked evidentiary support, and that "[b]oth of these circumstances could apply in this case." The court therefore remanded the matter to the trial court for further proceedings on the motion for sanctions.[12]

## III. The Malicious Prosecution Lawsuit

### A. Nishida Sues Dumas and Brown for Malicious Prosecution

On May 2, 2013, Nishida filed this malicious prosecution lawsuit against Dumas and Brown. In his complaint, Nishida alleged that, as of March 2010, when Dumas foreclosed on the deed of trust for Nishida's residence, Dumas and Brown had actual notice that the anti-deficiency statute barred Dumas from any further recovery against Nishida, but they continued to prosecute the breach of contract claim without probable cause through the filing of an appeal. Nishida further alleged that, as of December 2010, following the depositions of the parties, Dumas and Brown had actual notice that Nishida had minimal involvement in the transaction and had not made any false representations to

---

[12] The record on appeal does not include any documents from the underlying lawsuit regarding the trial court's reconsideration of the sanctions motion on remand. However, according to a declaration filed by Brown in the malicious prosecution action, the trial court denied the motion for sanctions on remand. The basis for the trial court's ruling is not disclosed in the record.

Dumas, but they continued to prosecute the fraud claim without probable cause until a voluntary dismissal of the claim shortly before trial. In addition, Nishida alleged that Dumas and Brown acted with malice in continuing to prosecute each claim because they knew Nishida was the only solvent party who remained in the action and intended to use the expense of litigation as a means to leverage further monies from him. The complaint sought compensatory and punitive damages from both Dumas and Brown.

## B.    Trial Court Denies the Special Motions to Strike the Complaint

On July 12, 2013, Dumas and Brown each filed a special motion to strike the malicious prosecution complaint pursuant to section 425.16. In their motions, they argued that the filing of the underlying lawsuit was an act in furtherance of the constitutional right of petition and therefore fell within the ambit of section 425.16. They further contended that Nishida could not demonstrate a probability of prevailing on the merits of his malicious prosecution action because Dumas's causes of action against Nishida for breach of contract and fraud were objectively tenable, and both Dumas and Brown acted without malice in continuing to prosecute each cause of action. Dumas also asserted that he was entitled to rely on Brown's legal advice regarding the tenability of his claims against Nishida.

In support of his motion, Dumas submitted a declaration in which he described the terms of his real estate transaction with Wells and Nishida. According to Dumas, one of the agreed upon terms was that Wells and Nishida would pay Dumas $1.1 million (less closing costs and existing encumbrances on the Temecula ranch) at the close of escrow, and after his receipt of these funds, Dumas would make a $300,000 loan to Wells and Nishida for use in their import and export business. Dumas instead received an escrow payment of approximately $330,000, "which was $500,000 less than what was required under our deal." He then contacted the escrow officer, who told him that "she had been instructed to wire $500,000 to the buyers." Dumas stated that "[s]ince [he] had not been paid $500,000 of the money due to [him] at the time of the close of escrow, [he] did not make the $300,000 business loan to Mr. Wells and Mr. Nishida."

16

In his declaration, Dumas also set forth his reasons for prosecuting the underlying lawsuit against Nishida. According to Dumas, when he retained his initial attorney, Rosenfeld, to represent him, he provided Rosenfeld with all of the documents he had in his possession pertaining to the transaction with Wells and Nishida, and told Rosenfeld all of the facts he knew about the transaction. Rosenfeld advised Dumas that he believed the claims to be alleged in the underlying lawsuit had merit. Prior to retaining Brown as substitute counsel in the case, Dumas also provided Brown with all of the documents and facts he had regarding the transaction and answered all of Brown's questions. Brown likewise advised Dumas that he believed the claims had merit and he reiterated this belief to Dumas over the course of the litigation. Dumas stated that his only purpose in filing the underlying lawsuit was to recover the money that he believed was owed to him under the parties' agreement, and that he did not harbor any hatred or ill will toward Nishida. Dumas further stated that all times from the filing of the underlying lawsuit to its final conclusion, he believed his claims against Nishida had merit based on his knowledge of the transaction and the advice that he received from his attorneys.

Brown also submitted a declaration in support of his special motion to strike the malicious prosecution complaint. According to Brown, prior to representing Dumas in the underlying lawsuit, he secured Dumas's file from Rosenfeld, requested any additional relevant documents in Dumas's possession, and then interviewed Dumas at length. Based on his review of the evidence, Brown believed Dumas's claims against Nishida had merit and that there was probable cause to continue prosecuting the claims. During the lawsuit, Brown deposed Nishida, who denied signing the amended escrow instruction that had caused the escrow holder to wire $474,000 to World Enterprise. Brown then retained a handwriting expert, who expressed the opinion that the signature on the escrow instruction was not that of Nishida. Based on this information, Brown no longer was confident Dumas would prevail on the fraud claim against Nishida, and he thus obtained Dumas's authorization to dismiss the fraud claim with prejudice.

In his declaration, Brown further explained that he continued to prosecute the breach of contract claim against Nishida because he believed the anti-deficiency statute

17

did not preclude Dumas from suing to recover all of the money he was entitled to receive from the escrow. According to Brown, "[n]one of that money came from the $600,000 promissory note." Rather, all of the money which Dumas sought to recover in the underlying lawsuit "was unsecured and consisted of cash which Countrywide, the purchase money lender, and Mr. Nishida, the purchaser, deposited to escrow." Like Dumas, Brown asserted in his declaration that "[t]he business loan of $300,000 was never made, because Mr. Dumas did not receive through escrow $500,000 that was due to him." Brown also stated that he did not harbor any ill will toward Nishida, and that his only purpose in prosecuting the underlying lawsuit was to recover the money that he believed his client was owed.

Nishida filed a joint opposition to the special motions to strike. He conceded that his malicious prosecution action arose from protected activity under section 425.16, but argued that he could demonstrate a probability of prevailing on the merits of his claim. Nishida supported his opposition with 36 different exhibits, which detailed the parties' actions and arguments in the underlying lawsuit.

On August 12, 2013, the trial court denied the special motions to strike filed by Dumas and Brown. In its order, the court concluded: "There are many interrelated and unusually complicated facts, inferring different findings, based upon opposing counsel's declaration authenticating prior records, as to what defendants knew about case merit (e.g., written or partly oral contracts), and whether they acted based upon full disclosures and in good faith." Following the denial of their motions, Dumas and Brown each filed a timely notice of appeal.[13]

---

**13** On May 29, 2015, prior to oral argument, Brown filed a request for judicial notice of a May 15, 2015 tentative decision issued by the trial court in Dumas's separate civil action against Wells and Houng following a bench trial in that case. We decline to take judicial notice of this document because it was not before the trial court in ruling on the special motions to strike, and is not relevant to our determination of whether the motions were properly denied. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 ["[r]eviewing courts generally do not take judicial notice of evidence not

18

## I.    Standard Of Review

Section 425.16 is commonly referred to as the anti-SLAPP statute.[14]  It provides, in pertinent part, that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)  Section 425.16 must be "construed broadly" to effectuate the statute's purpose, which is to encourage participation in matters of public significance and to ensure that such participation is not chilled through an abuse of the judicial process.  (§ 425.16, subd. (a).)

Resolution of a section 425.16 special motion to strike requires a two-step process.  First, the moving party must make a threshold showing that the challenged cause of action arises from constitutionally protected activity.  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)  If the moving party satisfies this prong, the burden shifts to the opposing party to demonstrate a probability of prevailing on the merits of the claim.  (*Rusheen v. Cohen*, *supra*, at p. 1056; *Equilon Enterprises v. Consumer Cause, Inc.*, *supra*, at p. 67.)  We review the trial court's ruling de novo, conducting an independent review of the entire

---

presented to the trial court"].)  On June 12, 2015, following oral argument, Brown filed a second request for judicial notice of the transcript of Dumas's December 2010 deposition and a June 8, 2015 minute order in Dumas's civil action against Wells.  We also decline to take judicial notice of these documents because the request was not timely filed and likewise is not relevant to our resolution of this appeal.

[14]    SLAPP is an acronym for "Strategic Lawsuit Against Public Participation."  (*Jarrow Formulas, Inc., v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

record.[15]  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325; *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

Nishida does not dispute that his malicious prosecution action arises from protected activity and is subject to a special motion to strike under section 425.16.  (See, e.g., *Jarrow Formulas, Inc., v. LaMarche*, *supra*, 31 Cal.4th at p. 741 ["action is not exempt from anti-SLAPP scrutiny merely because it is one for malicious prosecution"]; *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1088 [malicious prosecution claim "'aris[es] from' the defendant's constitutionally protected petitioning activity, and therefore is subject to the anti-SLAPP statute"].)  Accordingly, the issue on appeal is whether Nishida met his burden of demonstrating a probability of prevailing on the merits of his action against Dumas and Brown.

## II.  Probability of Prevailing on the Merits

### A.  Relevant Law

To demonstrate a probability of prevailing on the merits of a challenged cause of action, "the plaintiff must 'state[ ] and substantiate[ ] a legally sufficient claim.' [Citation.]"  (*Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 741.)  The plaintiff must make a prima facie showing of facts that would, if proven, support a judgment in his or her favor.  (*Soukup v. Law Offices of Herbert Hafif*, *supra*, 39 Cal.4th at p. 291.)  For purposes of this inquiry, the court """"must accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.""""

---

[15]     Nishida asserts that the appeals filed by Dumas and Brown should be dismissed because they failed to provide the trial court with a complete record of the underlying lawsuit when they filed their special motions to strike.  However, in his opposition to the motions, Nishida submitted an extensive record of those underlying proceedings, and the trial court thus had an adequate record before it for purposes of evaluating the issues raised.  In addition, Dumas and Brown have provided this court with an adequate record on appeal, consisting of a reporter's transcript and a clerk's transcript that includes all of the documents filed with the trial court in connection with the special motions to strike.

(*Flatley v. Mauro*, *supra*, 39 Cal.4th at p. 326.) Although "'the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif*, *supra*, at p. 291.)

"'[I]n order to establish a cause of action for malicious prosecution of either a criminal or civil proceeding, a plaintiff must demonstrate "that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his [or her], plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations]."' [Citation.]" (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 341.) "[C]ontinuing to prosecute a lawsuit discovered to lack probable cause" also may support an action for malicious prosecution. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 973.) In their special motions to strike, Dumas and Brown each argued that Nishida could not establish a probability of prevailing on the merits of his malicious prosecution action because he could not demonstrate that they prosecuted the underlying lawsuit without probable cause and with malice.[16]

"The question of probable cause is 'whether, as an objective matter, the prior action was legally tenable or not.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif*, *supra*, 39 Cal.4th at p. 292.) The resolution of that question requires an objective determination of the reasonableness of the underlying lawsuit based on the facts known

---

[16] On appeal, Brown also argues that Nishida cannot make a prima facie showing that the underlying lawsuit was terminated in his favor. As Nishida correctly asserts, however, Brown did not raise this argument in his special motion to strike before the trial court. "The general rule is that appellate courts will not consider matters raised for the first time on appeal. [Citation.]" (*Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1575, fn. 4.) While an appellate court does have discretion to consider a new matter where it involves a legal question applied to undisputed facts (*Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 700), we need not address Brown's argument regarding the favorable termination element because it ultimately does not affect our resolution of this appeal.

to the party bringing the suit. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 878.) "'A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif*, *supra*, at p. 292.) The test to be applied in evaluating the existence of probable cause is whether "any reasonable attorney would have thought the claim tenable." (*Sheldon Appel Co. v. Albert & Oliker*, *supra*, at p. 886.)

Probable cause may exist even where the underlying lawsuit lacks merit. (*Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 743, fn. 13.) "'Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win. . . .'" (*Sheldon Appel Co. v. Albert & Oliker*, *supra*, 47 Cal.3d at p. 885.) Reasonable lawyers also "'can differ, some seeing as meritless suits which others believe have merit, and some seeing as totally and completely without merit suits which others see as only marginally meritless.'" (*Jarrow Formulas, Inc. v. LaMarche*, *supra*, at p. 743, fn. 13.) "Only those actions that any reasonable attorney would agree are totally and completely without merit may form the basis for a malicious prosecution suit. [Citations.]" (*Zamos v. Stroud*, *supra*, 32 Cal.4th at p. 970.)

Because the standard for probable cause is objective rather than subjective, the adequacy of an attorney's factual investigation or legal research prior to filing suit is irrelevant to the probable cause determination. (*Sheldon Appel Co. v. Albert & Oliker*, *supra*, 47 Cal.3d at pp. 882-883.) Additionally, in making an initial assessment of tenability, an attorney is entitled to rely on the information provided by the client, unless the attorney is on notice of specific factual errors in the client's version of events that render the claim untenable. (*Swat-Fame, Inc. v. Goldstein* (2002) 101 Cal.App.4th 613, 625-627, disapproved on other grounds in *Zamos v. Stroud*, *supra*, 32 Cal.4th at p. 973.) Even when an attorney obtains evidence that appears to present a complete defense, the attorney may act reasonably in going forward with the lawsuit if there is a possibility that the defense will, on further evidence or examination, "prove less than solid." (*Zamos v. Stroud*, *supra*, at p. 970, fn. 9.) However, an attorney who has probable cause to

commence a lawsuit may be liable for malicious prosecution if he or she continues to prosecute the action after learning it is not supported by probable cause. (*Id*. at p. 973.)

## B. Breach of Contract Claim

In this case, we conclude that Nishida failed to make a prima facie showing that Dumas or Brown prosecuted the breach of contract claim against Nishida without probable cause. It is undisputed that Dumas and Nishida entered into a real estate transaction under the following terms: (1) Nishida and Wells would pay Dumas $1.1 million (less existing encumbrances and closing costs) for the purchase of the Temecula ranch at the close of escrow; (2) Nishida and Wells would pay Dumas an additional $300,000 in deferred consideration for the purchase of the ranch within a year after the close of escrow; (3) Dumas would loan Nishida and Wells $300,000 as an unrelated business loan to be repaid with interest approximately a year after the close of escrow; and (4) both the $300,000 deferred consideration and the $300,000 business loan would be memorialized in a $600,000 promissory note from Nishida to Dumas, secured by second deeds of trust on the Temecula ranch and Nishida's personal residence. In accordance with these terms, Nishida executed a $1.1 million purchase agreement, a $600,000 promissory note, and second deeds of trust on both the Temecula ranch and his Huntington Beach residence.

It is also undisputed that Dumas did not receive all of the money to which he was entitled under the terms of the parties' transaction. Of the $800,000 in escrow proceeds to be disbursed to the parties at the close of escrow, Dumas ultimately was entitled to retain approximately $500,000, but he instead received only $330,000 from the escrow proceeds. Dumas also was entitled to repayment of the $600,000 promissory note a year after the close of escrow, but he did not receive any of the payments due under the note. Accordingly, at the time Dumas filed the underlying lawsuit on August 4, 2009, he was still owed approximately $800,000 from Nishida and Wells under the parties' agreement.

Nishida does not assert that Dumas lacked probable cause to bring a cause of action for breach of contract in August 2009. Instead, Nishida argues that Dumas and

23

Brown lacked probable cause to continue prosecuting the contract claim after Dumas foreclosed on the deed of trust for Nishida's residence in March 2010. Nishida specifically contends that, once Dumas foreclosed on Nishida's residence, both Dumas and Brown had actual notice that the anti-deficiency statute barred Dumas from any further recovery from Nishida on the $600,000 promissory note, including both the $300,000 deferred consideration and the $300,000 business loan. Nishida also claims that Dumas was precluded from suing him to recover the additional $174,000 in misdirected escrow funds (the $474,000 disbursed to World Enterprise minus the $300,000 business loan) because Nishida satisfied his contractual obligation to Dumas by fully funding the escrow and did not cause the misdirection of any escrow funds to World Enterprise or Houng.

The record of the underlying lawsuit reflects that, when Dumas first brought the breach of contract claim against Nishida and others, he essentially sought three items of recovery: (1) the $300,000 deferred consideration that Dumas was owed in the sale of the Temecula ranch, (2) the $300,000 business loan that Dumas made to Nishida and Wells, and (3) the additional $174,000 in escrow proceeds that should have been paid to Dumas but was instead paid to World Enterprise.[17] While the first two items were secured obligations under the $600,000 promissory note signed by Nishida, the third item was an unsecured obligation. Once Dumas foreclosed on the deed of trust for Nishida's residence, which by its terms secured the full $600,000 note, he was barred by the anti-deficiency statute from obtaining any further judgment on the note. Thus, as of March 2010, Dumas was precluded from recovering any portion of the $300,000 deferred consideration and any portion of the $300,000 business loan in his breach of contract

---

[17]    In his complaint in the underlying lawsuit, Dumas identified two specific items of damages: (1) the $300,000 deferred consideration in the sale of the ranch, and (2) the "$500,000 that was improperly paid to the buyer in escrow." While the actual amount of escrow funds disbursed to World Enterprise was $474,000 (rather than $500,000), such amount consisted of the $300,000 business loan to Nishida and Wells and an additional $174,000 which should have been paid to Dumas.

claim against Nishida. However, as the court of appeal observed in the underlying lawsuit, "Dumas [was] not barred from recovering on any other contractual obligation owed to him by Nishida." Because the $174,000 in escrow funds which Premiere improperly paid to World Enterprise was an unsecured obligation, "[i]f Dumas could and did allege that Nishida's negligence was, in fact, the cause of Premiere's misdirection of funds, Dumas could assert a claim for the $174,000 against Nishida." Based on the record before us, we conclude that Dumas and Brown had probable cause to continue prosecuting the breach of contract claim against Nishida to seek recovery on the unsecured obligation owed to Dumas.

Contrary to Nishida's contention, a reasonable attorney could conclude that there was a legally tenable claim that Nishida was contractually liable for the misdirection of the escrow funds to World Enterprise. When Dumas first contacted the escrow officer about the deficiency in his escrow payment, she told him that she had been instructed to wire approximately $500,000 in escrow funds to the buyer. It is undisputed that Dumas never agreed to credit Nishida $500,000 from the proceeds of the escrow, nor did he authorize Premiere to transfer the $474,000 in escrow funds to Nishida or anyone affiliated with him. During the course of the underlying lawsuit, Dumas and Brown obtained a copy of the amended escrow instruction, which purported to bear Nishida's signature and directed Premiere to wire any funds due Nishida at the close of escrow to World Enterprise. When Nishida was deposed by Brown in November 2010, he denied signing the instruction or directing anyone to do so on his behalf. He also denied knowledge of the $500,000 credit provided to him by Premiere. While Nishida claims his deposition testimony put Dumas and Brown on notice that he lacked any involvement in the misdirected escrow funds, neither Dumas nor Brown was required to accept Nishida's denial of culpability in evaluating the merits of the case and they acted reasonably in retaining a handwriting expert to test the veracity of his testimony on the instruction.

Even after the expert confirmed that the signature on the instruction appeared to be a forgery, a reasonable attorney could conclude that the breach of contract claim against Nishida was still legally tenable based on other evidence in the case. Specifically, in December 2009, Nishida filed a sworn declaration in the underlying lawsuit in which he stated that "the only money that I ever received from Mr. Dumas was $160,000 which was part of the $300,000 business loan that was supposed to be given to me and to . . . Wells." Given that Dumas did not loan any money directly to Nishida or Wells, the only reasonable inference that could be drawn from Nishida's statement was that the $160,000 which he admitted to receiving came from the $474,000 in escrow funds which were improperly wired to World Enterprise. Nishida has not offered any other explanation about the source of the $160,000 payment to him, and a reasonable attorney could infer that Nishida's deposition testimony denying any knowledge of the improper transfer of escrow funds to World Enterprise was contradicted by his apparent receipt of a portion of those funds. Based on that evidence, Dumas and Brown had at least a legally tenable argument that Nishida was involved in the misdirection of escrow funds by Premiere, and was thus liable to Dumas for breach of contract under that theory.

Nishida argues that both the trial court and the court of appeal in the underlying lawsuit expressly rejected that theory of recovery in considering the merits of Dumas's breach of contract claim. As Nishida points out, the court of appeal concluded that there was "no basis on which Dumas could state a cause of action against Nishida for Premiere's breach of contract" because Nishida satisfied his contractual obligation by funding the escrow with the agreed upon $1.1 million, and "[i]t was Premiere which was contractually obligated to distribute the escrow proceeds to Dumas." However, as discussed, probable cause may exist even where the underlying lawsuit ultimately lacks merit. (*Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 743, fn. 13.) In assessing the tenability of the breach of contract claim, Dumas and Brown were entitled to rely on the documentary evidence showing that (1) Premiere received a forged escrow instruction directing that any escrow funds due Nishida be wired to World Enterprise, (2) Premiere disbursed $474,000 in escrow funds to World Enterprise, including

26

$174,000 which should have been paid to Dumas, and (3) Nishida later received $160,000 in escrow funds which presumably came from World Enterprise. While the court of appeal concluded that Dumas could not plead that Nishida's conduct was the cause of Premiere's misdirection of escrow funds, it did not consider whether a breach of contract claim under such theory was so completely without merit that no reasonable attorney would have thought the claim was tenable. Our independent review of the record shows that an action against Nishida to recover on the unsecured contractual obligation he owed to Dumas was objectively tenable, and therefore, Dumas and Brown had probable cause to continue prosecuting the breach of contract claim.[18]

Nishida also contends that a lack of probable cause is shown by the contradictory arguments made by Dumas and Brown about the funding of the $300,000 business loan. It is true, as the court of appeal in the prior opinion observed, that Dumas and Brown have taken inconsistent positions in the litigation about whether business loan to Nishida and Wells was in fact made. At times, they have asserted that the loan was made through escrow and that Dumas should have received the approximately $500,000 in escrow proceeds that remained after $300,000 was paid to Nishida or his assignee. Dumas made statements to this effect at his deposition and in a declaration submitted in the underlying lawsuit, and Brown took this position in various briefs filed with the trial court in that

[18]    Nishida asserts that Dumas and Brown waived their right to argue that they had probable cause to pursue a breach of contract claim under this theory because they did not raise the theory in the underlying lawsuit. In support of this claim, Nishida points to a statement in the prior appellate opinion that Dumas "makes no argument that he could proceed on a breach of contract claim against Nishida for the allegedly improper distribution of the remaining [$174.000]." However, when the statement is read in context, it is clear the court of appeal was explaining that Dumas's argument on appeal with respect to the misdirected escrow funds was that he was entitled to recover the entire $474,000 paid to World Enterprise and not simply the $174,000 that remained after the $300,000 business loan was taken into account. Dumas's complaint and other filings in the underlying suit clearly reflect that he was seeking to recover the amount of escrow funds improperly disbursed by Premiere as an item of damages in his breach of contract claim against Nishida. Hence, Dumas and Brown did not raise such theory for the first time in their motions to strike the malicious prosecution complaint.

action. At other times, however, Dumas and Brown have taken the position that the business loan was to be funded by Dumas outside of escrow after he received the entire $800,000 in escrow proceeds, and that he never made the loan to Nishida and Wells because he did not receive the total amount of escrow funds to which he was entitled. It appears that Dumas and Brown took this position in the appeal filed in the underlying lawsuit, and they made statements to this effect in their declarations filed in support of the special motions to strike in the malicious prosecution action.

As the prior appellate opinion made clear, if the business loan was never funded, as Dumas and Brown presently claim, then there was no consideration for the loan and Dumas wrongfully foreclosed on Nishida's residence. Accordingly, the loan must have been funded from the $474,000 in escrow proceeds paid to World Enterprise, and Dumas and Brown are precluded from arguing otherwise on appeal. While we are troubled by the inconsistent positions taken by Dumas and Brown on this issue over the course of the litigation, the proper focus of the probable cause inquiry is on the objective tenability of the underlying claim. On this record, a reasonable attorney could conclude that there was a legally tenable basis for maintaining a breach of contract action against Nishida to recover on the unsecured obligation owed to Dumas under the parties' agreement. Nishida therefore has failed to make a prima facie showing that Dumas or Brown continued to prosecute the breach of contract claim without probable cause.

### C. Fraud Claim

We also conclude that Dumas and Brown had probable cause to prosecute the fraud cause of action against Nishida until their voluntary dismissal of the claim in April 2011. When Dumas filed the underlying lawsuit in August 2009, he had a legally tenable argument that Nishida and Wells had fraudulently induced him to enter into the real estate transaction. Nishida and Wells had promised to pay Dumas $1.1 million (less existing encumbrances and closing costs) at the close of escrow for the purchase of the Temecula ranch. However, Dumas did not receive the total amount of escrow proceeds to which he was entitled, and he was told by the escrow officer that she had been

28

instructed to wire approximately $500,000 in escrow funds to the buyer. The final settlement statements prepared by the escrow officer also showed a $500,000 credit to the buyer which Dumas never authorized, and an amended escrow instruction bearing Nishida's purported signature directed the escrow officer to wire any funds due Nishida to World Enterprise. According to Dumas, World Enterprise was an entity controlled by Houng, who also was the loan officer that arranged for the loan to Nishida to purchase the Temecula ranch. Based on these facts, a reasonable attorney could conclude that a fraud claim against Nishida was at least legally tenable.

Nishida argues that, even if there was probable cause to bring a fraud claim against him in August 2009, Dumas and Brown were on notice that the claim lacked merit as early as November 2010, when Nishida testified at his deposition that he did not sign the amended instruction that caused the misdirection of escrow funds to World Enterprise. However, as discussed, Nishida's denial of culpability at his deposition did not establish that the fraud claim was objectively untenable, and Dumas and Brown were entitled to further investigate the merits of the claim by, among other acts, retaining a handwriting expert to render an opinion on the authenticity of the signature. While investigating whether the signed instruction was in fact a forgery, Brown also conducted an interview with the escrow officer in late February 2011. At that time, the escrow officer told Brown that she had assumed Nishida was entitled to receive $600,000 in escrow funds based on the promissory note and the deeds of trust.[19] After interviewing the escrow officer and obtaining the handwriting expert's opinion that the signature on the instruction was not that of Nishida, Brown advised Dumas that he was no longer confident that Dumas would prevail on the fraud claim. Dumas then authorized Brown to dismiss the fraud claim against Nishida with prejudice, which Brown did in April 2011. While Nishida asserts that Brown should have been more diligent in investigating the

---

[19]     While the escrow officer confirmed at a subsequent deposition that she made this statement to Brown, it is unclear why she disbursed $474,000 in escrow funds to World Enterprise if she believed the parties' agreement called for the payment of $600,000.

merits of the claim, the adequacy of an attorney's research or factual investigation is not relevant to determining probable cause because it improperly "shifts the focus of the probable cause inquiry from the objective tenability of the prior claim to the adequacy of the particular defendant's performance as an attorney." (*Sheldon Appel Co. v. Albert & Oliker*, *supra*, 47 Cal.3d at p. 883.) Brown's alleged deficiencies in investigating the fraud claim thus do not support a showing of probable cause.

Based on this record, Nishida failed to demonstrate a probability of proving that Dumas or Brown lacked probable cause to either commence or pursue the underlying lawsuit. The trial court accordingly erred in denying the special motions to strike filed by Dumas and Brown, and the matter must be remanded to the trial court for further proceedings consisting with this opinion.[20]

## III. Attorney's Fees and Costs

Section 425.16, subdivision (c), provides that "[i]n any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. …" An award of attorney's fees to the party bringing a successful special motion to strike under section 425.16 is "mandatory." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131.) Moreover, the right to recover fees and costs extends to those incurred on appeal. (*Rosenaur v. Scherer* (2001) 88 Cal.App.4th 260, 287 ["appellate courts have construed section 425.16, subdivision (c), to include an attorney fees award on appeal"]; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785 ["[s]ince section 425.16, subdivision (c) provides for an award of attorney fees and costs to a prevailing defendant on a special

---

[20] Because Nishida did not establish a probability of prevailing on the probable cause element of his malicious prosecution action, we need not address the malice element or Dumas's claim of reliance on the advice of his counsel. "If the court determines that there was probable cause to institute the prior action, the malicious prosecution action fails, whether or not there is evidence that the prior suit was maliciously motivated. [Citations.]" (*Sheldon Appel Co. v. Albert & Oliker*, *supra*, 47 Cal.3d at p. 875.)

motion to strike, and does not preclude recovery of appellate attorney fees by a prevailing defendant-respondent, those fees are recoverable"].)  Therefore, on remand, the trial court is directed to conduct appropriate proceedings to determine the reasonable attorney's fees and costs, including those incurred on appeal, to be awarded to Dumas and Brown.

## DISPOSITION

The order denying the special motions to strike filed by Dumas and Brown is reversed.  The cause is remanded to the trial court with directions to enter judgment in favor of defendants and to conduct further proceedings to determine the amount of attorney's fees and costs to be awarded to Dumas and Brown as the prevailing parties. Dumas and Brown also are to recover their attorney's fees and costs on appeal in an amount to be determined by the trial court.


ZELON, J.


We concur:



PERLUSS, P. J.



IWASAKI, J.[*]

---

[*]  Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.